**CIELO VISTA BANK, El Paso, Texas, Appellant,**

v.

**J.R. McCUTCHEON, Appellee.**

**No. 08-86-00099-CV.**

Court of Appeals of Texas, El Paso.

Oct. 29, 1986.

Rehearing Denied Dec. 3, 1986.

Terry K. Donk, Law Office of Terry K. Donk, Odessa, for appellant.

Jerry D. Caddel, Mark A. Krutsinger, McMahon, Cox, Tidwell, McCoy, Hansen and Adkins, P.C., Odessa, for appellee.

Before OSBORN, C.J., and SCHULTE and ARMENDARIZ, JJ.

---

OPINION

ARMENDARIZ, Justice.

This is an appeal from a judgment in favor of Appellee in the sum of $205,000.00 together with an ordered transfer of the lien securing same. The court's action is based on a finding of a constructive trust in Appellee herein on certain real property located in Ector County, Texas, which property was sold during the proceedings by agreement of the parties and converted into a note and security interest from the new purchaser to Appellant bank. Trial was to a jury. At the conclusion of the evidence, both parties moved for directed verdicts. Appellant's motion was denied while Appellee's motion was granted, with the court removing consideration of the case from the jury. The court filed findings of fact and conclusions of law. We affirm.

William A. Dozier and Appellee, J.R. McCutcheon, agreed in late 1981 to enter into the automobile business together. Each was to invest $80,000.00 and profits were to be shared equally. Appellee advanced $80,000.00 to William Dozier on September 9, 1981. Dozier was to be President and Appellee was to be Secretary of the business venture. A corporation was legally formed on January 11, 1982; however, Appellee was not named Secretary. Appellee did not know that he had been left out as a corporate officer.

Appellee and Dozier agreed that the corporation, Bill Dozier Auto Sales and Leasing, Inc., should buy a particular piece of property to establish a car lot. In February, 1982, the corporation was to buy Lots 1 and 2, Block 1, Cox Addition, Odessa, Ector County, Texas. Dozier represented to Appellee that he would obtain financing through Appellant, Cielo Vista Bank, to complete said purchase. Prior to closing, Dozier informed Appellee that he was unable to procure financing from Appellant and that, unless the corporation went through with closing, severe penalties would have to be paid. Dozier convinced Appellee to advance the purchase price balance ($178,000.00) in order to avoid any penalties. It was agreed that title to the property was to be taken in the name of the corporation and Appellee was to be reimbursed out of financing to be obtained from Appellant subsequently. Title was taken as "Bill Dozier Auto Sales and Leasing Corp."

Prior to the existence of the corporation, Mr. Dozier, on November 10, 1981, secured a personal revolving credit loan up to $250,000.00 from Appellant bank, granting a security interest to Appellant in a certificate of deposit with Appellant in the amount of $100,000.00. The alleged purpose of the loan was to purchase automobile inventory. Dozier was not to receive the total amount until the loan was fully "collateralized." Payment on this obligation became due on November 10, 1982, and was not paid. On December 8, 1982, Dozier executed a real estate lien note to Cielo Vista Bank and a deed of trust conveying to a trustee the property on which Bill Dozier Auto Sales and Leasing, Inc. was operating. Thus the corporate real property, the title to which was in the name Bill Dozier Auto Sales and Leasing Corporation, was mortgaged to Appellant in order to fully collateralize the delinquent $250,000.00 personal revolving credit account of Mr. Dozier. Mr. Dozier's certificate of deposit was released to him and was closed on December 7, 1982, with the proceeds going to a checking account and the sum of $35,378.63 was applied to the Dozier revolving credit account.

In July, 1983, after discovering what Dozier had done, Appellee filed suit against Mr. Dozier and Appellant bank and filed a lis pendens.

William Dozier secured the revolving credit account of $250,000.00 with Appellant in November, 1981. The corporation, Bill Dozier Auto Sales and Leasing, was not formed until January, 1982. In December, 1982, Dozier mortgaged the property in question to Appellant. Essentially corporate assets were encumbered to secure a loan personal to Mr. Dozier. Mr. Dozier is the only payor named in the original note executed to Cielo Vista Bank and there is

no mention of or reference to any business purpose for the revolving credit account, nor is there mention of the corporation. Indeed, the corporation was not then in existence. The subsequent note of December 8, 1982, and in the principal sum of $221,850.00 even states that the December 8 note was to renew the original note executed by William Dozier. The bank, therefore, had notice that a personal debt was being secured by the encumbrance of corporate property, or that such personal debt was being assumed by the corporation.

The Texas Business Corporation Act at the pertinent time prohibited such a transaction between a corporation and its officers. "Subject to the provisions of Sections B and C of this Article, each corporation shall have power: ... (6) To lend money to, and otherwise assist, its employees, but not to its officers and directors." Tex. Bus.Corp.Act Ann. art. 2.02 A(6) (Vernon 1980).

Also pertinent is the Miscellaneous Corporation Laws Act. Article 1302–2.06 B Tex.Rev.Civ.Stat.Ann. (Vernon 1980), reads in pertinent part as follows:

> [A]ny corporation, domestic or foreign, doing business in this state shall have the power and authority to make a guaranty if the guaranty reasonably may be expected to benefit, directly or indirectly, the guarantor corporation. For purposes of this section and Section C of this Article, "guaranty" means a guaranty, mortgage, pledge, security agreement, or other agreement making the guarantor corporation or its assets responsible respecting the contracts, securities, or other obligations of any person (including, but not limited to, any domestic or foreign corporation, partnership, association, joint venture, or trust, but excluding any officer or director of such guarantor corporation). The decision of the Board of Directors that the guaranty may reasonably be expected to benefit, directly or indirectly, the guarantor corporation shall be binding upon the guarantor corporation, and no guaranty made by a corporation in accordance with the provisions of this Section B shall be invalid or unenforceable as against such corporation, unless such guaranty is sought to be enforced by a person who participated in a fraud on the guarantor corporation resulting in the making of the guaranty or by a person who had notice of such fraud before he acquired his rights under the guaranty.

■ It appears then that it was improper for the corporation to assume the obligation of Mr. Dozier. The assumption of the obligation was tantamount to advancing the necessary funds to Dozier to pay off the indebtedness. This is specifically excluded from the general powers of a corporation under Tex.Bus.Corp.Act. art. 2.02 A(6). Under Article 1302–2.06 B it is equally improper for a corporation to guaranty an officer's debt—in this case by mortgaging corporate assets. Yet Article 1302–2.06 B also provides that any such "guaranty" remain enforceable as against the guarantor corporation, unless the party seeking to so enforce was a party to a fraud which resulted in the guaranty or had notice thereof prior to acquiring rights in the guaranty. In this case, we have a note executed on November 10, 1981, by William Dozier and putting up as collateral a certificate of deposit. The note was for the principal amount of $250,000.00 in a revolving credit account payable on demand or before November 10, 1982. Then in December, 1982, after the original note was approximately one month overdue, a second note to Appellant was executed by Dozier, but this time in his capacity as President of the corporation. The second note was executed on December 8, 1982, in renewal and extension of the original note of November 10, 1981.

Appellant bank now seeks to retain the proceeds from the foreclosure upon the property encumbered by the corporation's note. Appellant was on at least inquiry notice that something was awry.

Dozier had executed a note in his personal capacity to Appellant in 1981, payable in 1982, without any restriction as to the use or application of the funds. This note was

not timely paid. The bank then accepted a new note executed by the same Dozier, yet now in his capacity as President of Bill Dozier Auto Sales and Leasing, Inc. Mr. Dozier requested and obtained the release of his personal certificate of deposit as security and encumbered corporate assets to secure what appeared to be and remain his personal note.

■ The entire $250,000.00 appears to have been advanced to Mr. Dozier prior to any involvement of the corporation; indeed the corporation did not yet exist. The Appellant bank, as a business, ought to be charged with knowledge of Article 1302-2.-06 and the Business Corporation Act art. 2.02. Due to the overdue status of the original note and the subsequent encumbrance of corporate assets for Dozier's personal loan, Appellant bank ought to be charged with having been on inquiry notice that Dozier did not have the means to pay off his obligation. Being charged with knowledge of the above statutes, Appellant should not have allowed Dozier to regain his own collateral and renew and extend the original note by mortgaging corporate assets.

■ As to the enforceability of the note against the corporation, it must also fall. Appellant, while being on inquiry notice and being charged with the knowledge of the law, was at least on notice of a possible fraud on the corporation by Dozier prior to acquiring the interest in the corporate assets. As such, Appellant cannot enforce the mortgage on said assets under Article 1302-2.06B. It appears then that Appellant should not have been able to foreclose on the property involved. Since the bank was allowed to do so, the proceeds must go to him who would have owned the property but for the foreclosure.

■ Point of Error No. One asserts that it was error for the trial court to find a constructive trust between Appellee and William Dozier, or the corporation. For such a trust to arise, it is settled that there must first have existed a confidential or fiduciary relationship.

In this case, we have two businessmen who agree to open an automobile dealership and to share the profits. From this point on, Appellee and Dozier are either partners or incorporators and owe each other the duty of utmost good faith. The subsequent agreement to purchase the property involved here was a separate and distinct transaction. Thus the prerequisite is satisfied. "[F]or a constructive trust to arise there must be a fiduciary relationship before, and apart from, the agreement made the basis of the suit." *Tyra v. Woodson*, 495 S.W.2d 211, 213 (Tex.1973). Although trust amongst businessmen will not establish a fiduciary relationship, *Winchester Oil Company v. Glass*, 683 S.W.2d 35, 39 (Tex.App.—Texarkana 1984, no writ), this agreement to purchase and the eventual purchase of the property were within the scope of the duties arising from the prior relationship. *Winchester*, supra. A constructive trust then did arise in this situation as between the corporation or Dozier and Appellee to prevent unjust enrichment. Point of Error No. One is overruled.

In Point of Error No. Two, Appellant also asserts that it was error for the trial court to find that Appellant was not a bona fide mortgagee with respect to the property. As it has been found that Appellant knew or should have known that it was improper for the corporation to assume the debt of its officer, Dozier, and that Appellant was on inquiry notice that Dozier might be perpetrating a fraud on the corporation, Point of Error No. Two is overruled.

Point of Error No. Three asserts that it was error for the trial court to take from the jury the issue as to whether Appellant was a bona fide mortgagee. In view of the statutes and the evidence in the record, it cannot be said that reasonable minds may differ. It is improper for a corporation to assume the debts of its officers and also improper to guaranty such debts. Dozier's dealing with the Appellant bank, his overdue original note, and the statutes providing that corporate assumption or guaranty of an officer's debt is outside the power of the corporation, all indicate that reasonable

minds could not differ on this point. Point of Error No. Three is overruled.

In its final point of error, Appellant asserts that the trial court's ruling favored "secret title" over "apparent title." Given the foregoing findings, it is not necessary to deal with this point of error. Appellant could not have taken title to this property as explained above.

The judgment of the court below is affirmed.